Filed 12/11/20  P. v. Wooley CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GARY LAMAAR WOOLEY,<br><br>        Defendant and Appellant. | B303431<br><br>(Los Angeles County<br>Super. Ct. No. TA144673) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Gary Wooley was sitting in a vehicle in a drive-through lane of a Burger King when Jerry Whitaker walked up and punched him through the open car window. Whitaker then walked around the vehicle and apparently confronted the backseat passenger. Defendant got out of the car with a gun and shot Whitaker, then chased and shot Whitaker as he ran away. Whitaker sustained gunshot wounds to the front of his thigh and his lower back. In a recorded jailhouse call in which defendant discussed the incident with his brother, defendant stated, "My intention was trying to kill that fool." A jury convicted defendant of attempted murder and possession of a firearm by a felon.

On appeal, defendant asserts that that there was insufficient evidence to support the conviction for attempted murder, and the jury was compelled to find that the shooting was done in self-defense. He also argues that the trial court erred in admitting late-disclosed evidence, and in failing to instruct the jury with the corpus delicti rule. We find that the evidence was sufficient to support the verdict, and find no error or prejudice regarding the late-disclosed evidence. Although the court erred in failing to instruct on the corpus delicti rule, the error was harmless. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In an amended information, the Los Angeles County District Attorney (the People) charged defendant with attempted murder (Pen. Code, §§ 667, 187, subd. (a), count 1),[1] and possession of a firearm by a felon (§ 29800, subd. (a)(1), count 2). The information further alleged that as to count 1, defendant

_____

[1]All further statutory references are to the Penal Code unless otherwise indicated.

personally and intentionally discharged a firearm (§ 12022.53, subd. (d)). In addition, the information alleged that with respect to count 1, defendant suffered a prior serious or violent felony conviction (§ 667, subd. (a)(1)), and a prior strike conviction under the Three Strikes Law (§§ 667, subds. (b)-(j), 1170.12).

Defendant pled not guilty, and the case proceeded to a jury trial. The following evidence was presented at trial.

The jury was shown surveillance video of the shooting that occurred at a Burger King restaurant on November 10, 2017, at about 2:00 p.m. The video showed cars waiting in line at the drive-through window. The victim, Jerry Whitaker, was sitting on a low wall near the drive-through lane. One of the cars in line was a white SUV driven by defendant. A woman exited the SUV from the front passenger door and walked into the restaurant. Whitaker got up, walked to the driver's side of the SUV, and appeared to reach into the open window and punch defendant. The back right door of the SUV opened; the video does not clearly show whether someone got out. Whitaker walked around the rear of the car toward the open back door, where he was no longer visible to the camera. Defendant exited the car through the driver's door as Whitaker walked back around the rear of the vehicle; defendant and Whitaker met near the rear left corner of the vehicle. Defendant appeared to shoot Whitaker. Whitaker turned and began running away; defendant followed, pointing the gun toward Whitaker. The video does not make clear when shots were fired. Whitaker ran around the corner of the restaurant and continued running along a walkway. In video from the inside the restaurant, Whitaker can be seen through the window running down the walkway with his arms raised. Defendant paused at the corner of the restaurant with the gun pointing toward

3

Whitaker.  Defendant then returned to the SUV and got in, the back passenger door closed, and the SUV drove away.  The female passenger remained inside the restaurant.

Los Angeles Police Department (LAPD) detective Erik Shear testified that he responded to the call at the Burger King.  Shear found victim Whitaker in "very poor" condition; "He was laying on his back.  He was bleeding . . . pretty heavily from a gunshot wound to his back. And he was nonresponsive."  Whitaker had been shot in the front of his thigh and in his lower back.  Shear testified that he found four expended cartridge casings in the drive-through lane and walkway next to the Burger King.  A vehicle in the parking lot had also been struck by one of the bullets.  The vehicle was around the corner from the drive-through lane, indicating that at least one round had been fired after Whitaker rounded the corner of the restaurant.  A trail of blood led to where Whitaker had collapsed on the walkway outside the restaurant.  Whitaker had not been armed.

Shear reviewed the surveillance video and got the license plate number of the white SUV.  He determined that the registered owner of the vehicle was Renate Brumfield.  Shear put a "want" out for the vehicle, alerting officers that if the vehicle were spotted, it should be stopped and the people inside detained.  Shear learned that the vehicle had been stopped by police a few weeks earlier, on October 22, 2017.  Defendant was driving the car during the stop, and Brumfield was in the car at the time.  The jury was shown a portion of the officer's body camera footage from the stop.

In the early morning hours of November 11, 2017, police executed a search warrant for a residence near the restaurant, where they discovered  a Hi-Point .380 caliber semiautomatic

4

pistol with a magazine in a trash can.  Ballistics test results showed that this pistol fired the casings found at the Burger King.  No fingerprints were found on the pistol.  Witness Martina Felix testified that she lived at the residence where the pistol was found, and that on November 10, 2017 there was a barbecue at the home.  Defendant was friends with Felix's cousin, who also lived at the home.  While officers were at the home executing the search warrant, Felix told them that defendant had been at the barbecue the previous evening.

The same day, a search warrant was executed at another residence, where police detained defendant.  Officers found .380 caliber ammunition in the room where defendant was detained.

On November 14, 2017, sheriff's deputies informed Detective Shear that they had located the white SUV.  Brumfield, the registered owner, was with the vehicle.  The vehicle was impounded and searched; Shear found that the radio could easily be pulled from the dashboard, revealing a space behind it.  Shear testified that in the video of the incident, defendant's movements inside the car after he had been punched were "consistent with maybe a firearm was hidden behind that radio," but he "couldn't see it definitively."

The People introduced audio recordings of several calls defendant made from jail.  In one call on November 11, 2017, defendant was speaking with his brother, Marvin.  Defendant told Marvin that the gun had been found "somewhere else in somebody else's house," and he said, "[T]hat gun done been through hands, cuz. Ain't no fingerprints on that mutherfucker. . . ."  In another call  later the same day, Marvin said, "[C]learly if they got the video camera, then it shows this person came and attacked you first, so they can't say your intention was to kill

5

him." Defendant responded, "Right. My intention was trying to kill that fool. Nigga, I was trying –."

In another call, defendant spoke to Brumfield on February 4, 2019, shortly before the trial began. Defendant told Brumfield that the prosecutor was trying to find her to use her as a witness, so she could repeat an earlier statement to police that defendant was the only other person who drove her car. Defendant told Brumfield, "[Y]ou tell too much, baby. You talk too damn much." He told Brumfield that she "ratted me out" by telling police "'Oh, don't nobody else drive my car but him.'" Defendant also said, "I'm blaming you for making yourself a witness." Brumfield did not appear at trial. Detective Shear testified that Brumfield had been served with a subpoena, and the court took judicial notice of the body attachment it issued for Brumfield.

In another call from defendant to Brumfield on February 7, 2019, Brumfield added a third caller, an unidentified male. In this call, after Brumfield added the third caller, defendant said, "Whitey and, uh, Tina, yeah, they . . . basically said nigga took the gun over there." "Tina" was witness Martina Felix. Defendant continued, "I never took no gun over there, cuz. That's the thing, because I didn't take no gun over there, nigga. That was Squeaky and – and – and Dale." He said, "[S]he told them that, cuz, so they subpoenaed her to court, cuz, and she came to the court yesterday. But they told her they don't need her right now and told her to come back Monday." Defendant continued, "She don't need to come, cuz. She need to, uh, to go on and get somewhere and get – get little, because she should have said nothing." Detective Shear testified that "get little" means to "[s]tay low or hide out. Not be found."

The defense did not present any witnesses or evidence. Defendant admitted his prior felony conviction for purposes of count 2. The court instructed the jury on attempted murder, self-defense and defense of another, attempted voluntary manslaughter/heat of passion, and imperfect self-defense.

In closing, the prosecutor discussed the identification of defendant by noting the traffic stop with defendant in Brumfield's car shortly before the Burger King incident. She also argued that the jail calls also demonstrated defendant's identity, because he did not deny that he was involved in the crime, and demonstrated consciousness of guilt, because he dissuaded witnesses from testifying against him. The prosecutor argued that defendant shot at Whitaker as he was running away, while Whitaker was no longer any threat, so he was not acting in self-defense. She also emphasized defendant's statement on the jail call that he intended to "kill that fool."

In his closing, defense counsel admitted defendant was the shooter and focused on intent. Counsel said that if defendant intended to kill Whitaker, he would have shot him more times, or shot him in the head. He argued that defendant's statements about people testifying against him were not an indication of consciousness of guilt, they were "consciousness of trying to win his case." Defense counsel argued that Whitaker's attack on defendant was violent and unexpected, and the entire incident happened fast. He also asserted that the evidence showed that Whitaker was shot while he was close to defendant, not while he was running away around the corner of the building.

The jury convicted defendant of attempted murder (§§ 667, 187, subd. (a), count 1), and possession of a firearm by a felon

7

(§ 29800, subd. (a)(1), count 2).  The jury found true the allegation that defendant personally and intentionally discharged a firearm with respect to count 1 (§ 12022.53, subd. (d)).  Defendant stipulated to his prior strike conviction.

The court sentenced defendant to a total of 18 years and eight months, calculated as follows:  on count 1, the high term of nine years doubled to 18 years under the Three Strikes Law, plus a consecutive eight months (one third the midterm) on count 2.  The court exercised its discretion to not impose a 25-years-to-life enhancement under section 12022.53, subdivision (d) (§ 12022.53, subd. (h)), and stayed the enhancement under section 667, subdivision (a)(1).  The court calculated defendant's custody credits, and imposed various fines and fees.  Defendant timely appealed.

## DISCUSSION

Defendant asserts three errors on appeal:  He contends the trial court erred by admitting late-disclosed jail calls as evidence, the court erred by failing to instruct on corpus delicti, and there was insufficient evidence to support the verdict.  We consider each of these contentions below.

## A.    Admission of late-disclosed evidence

Defendant asserts in a supplemental brief that the "trial court abused its discretion when it denied the defense motion to exclude the jail calls which were not turned over to the defense until two days before trial, rather than 30 days before trial as required by statute."  Defendant's brief states, "In the present case, the prosecutor waited until two days before trial, on February 4, 2019, to turn over recorded jail calls from November 2017, to the defense.  (2RT A-1, A-2, A-7, A-11.  The prosecution had the evidence for one year, and three months.  (1ART A-1-A-2,

8

A-7-A-8.)  Defense counsel objected to the late discovery and moved to exclude the jail calls.  (ART A-2, A-7.)  The trial court noted by the prosecution's own acknowledgment, law enforcement had the tape and statements since November 2017.  (1RT A-8.)  The trial court remarked, 'It's clearly untimely.'  (2RT A-8.)  The trial court ordered the tapes and transcripts turned over forthwith, but denied the motion to exclude.  (2RT A-10.)"[2]

This recitation of the facts is inaccurate in two key respects.  First, the evidence at issue did not consist of recorded jail calls.  Second, defense counsel did not move to exclude it.  At the hearing on February 4, 2019, the prosecutor said to the court, "[T]he People are going to ask for a 1054.7[3] in connection to discovery that the People intend to turn over to [the] defense right now."  Defense counsel observed that it was very late to disclose new evidence because trial was about to begin, and the court responded, "I'm well aware of that."

During the in-camera hearing, the record of which is separated from the remainder of the reporter's transcript and sealed, the prosecutor stated that the evidence consisted of "an interview from a percipient witness" who provided information to police.  The prosecutor explained that portions of the interview related to other crimes and were not relevant to this case, and

---

[2]Defendant's citation to "1ART" and "1RT" appear to be erroneous; the pages at issue are in the second volume of the reporter's transcript, or "2 RT."

[3]Section 1054.7 states that disclosures "shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred."  It further provides, "Upon the request of any party, the court may permit a showing of good cause for the denial or regulation of disclosures, or any portion of that showing, to be made in camera."

9

asked that those portions be redacted before providing the recording of the interview to the defense. The prosecutor admitted that law enforcement had obtained the evidence in November 2017 shortly after the crime occurred, but said the prosecution had only recently learned about it.

In open court the judge stated, "We just concluded an in-camera hearing pursuant to 1054.7. The request by [the People] is denied. You're ordered to disclose an unredacted version of the audiotape. If you have a transcript, you're ordered to provide an unredacted version of the transcript as well." The court ordered the prosecutor to provide the evidence to defense counsel that day.

Defense counsel stated that he "would be entertaining a *Brady* motion" because the evidence was untimely.[4] The court said, "Well, it's clearly untimely. The question – it's not a *Brady* issue, at least from what [the prosecutor] has indicated. It's inculpatory, not exculpatory." Defense counsel said that after he heard the recording, he would decide whether to file a motion to exclude. The record on appeal does not include a motion to exclude the evidence. The witness's statements were not introduced at trial.

On appeal, defendant cites this portion of the record and asserts that the court "denied the defense motion to exclude the jail calls." He argues, "It was a discovery violation to turn appellant's recorded statements to the defense two days before trial, rather than 30 days as required by statute." He also contends that the defense was "unfairly surprised by this delay," especially because the jail calls were "so damaging to the defense case." Defendant includes arguments that he was prejudiced by

---

[4]See *Brady v. Maryland* (1963) 373 U.S. 83.

10

introduction of the calls made on the evening of February 4 and on February 7, 2019—evidence that did not exist at the time of the February 4 hearing. In its brief, the Attorney General asserts that defendant forfeited this argument because he never made a motion to exclude the evidence. However, the Attorney General also incorrectly refers to the late-disclosed evidence as if it constituted jail call recordings rather than an interview with a percipient witness

Defendant's argument is not supported by the record. The late-disclosed evidence involved the interview of a percipient witness whose statements were never introduced at trial. Defendant has demonstrated neither error nor prejudice regarding the court's rulings at the February 4, 2019 hearing.

## B. The court's failure to instruct the jury on corpus delicti was harmless

Defendant asserts that the court erred in failing to instruct the jury with CALCRIM No. 359, the corpus delicti rule, which states in part, "The defendant may not be convicted of any crime based on (his/her) out-of-court statement[s] alone. You may rely on the defendant's out-of-court statements to convict (him/her) only if you first conclude that other evidence shows that the charged crime [or a lesser included offense] was committed."[5]

---

[5]CALCRIM No. 359 states in full:

"The defendant may not be convicted of any crime based on (his/her) out-of-court statement[s] alone. You may rely on the defendant's out-of-court statements to convict (him/her) only if you first conclude that other evidence shows that the charged crime [or a lesser included offense] was committed.

That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed.

11

"Whenever an accused's extrajudicial statements form part of the prosecution's evidence," the trial court is required "to *instruct* sua sponte that a finding of guilt cannot be predicated on the statements alone." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1170 (emphasis in original) (*Alvarez*).)

The parties agree that the trial court erred in failing to give CALCRIM No. 359. However, the Attorney General asserts that any such error was harmless. "Error in omitting a corpus delicti instruction is considered harmless, and thus no basis for reversal, if there appears no reasonable probability the jury would have reached a result more favorable to the defendant had the instruction been given." (*Alvarez, supra*, 27 Cal.4th at p. 1181.)

Defendant contends the error was prejudicial. He argues, "In six [*sic*] recorded jail calls, [defendant] admitted shooting Whitaker with the intent to kill, wiping the gun clean, that he drove, and dissuaded witnesses from testifying, which established not only both counts and the firearm enhancement, but consciousness of guilt and negated self-defense and unreasonable self-defense." Defendant asserts that "[i]f the jury had been informed it needed corroborating evidence it is reasonably probable [defendant] would have received a more favorable outcome."

---

This requirement of other evidence does not apply to proving the identity of the person who committed the crime [and the degree of the crime]. If other evidence shows that the charged crime [or a lesser included offense] was committed, the identity of the person who committed it [and the degree of the crime] may be proved by the defendant's statement[s] alone.

You may not convict the defendant unless the People have proved (his/her) guilt beyond a reasonable doubt."

12

There was more than sufficient independent evidence of the corpus delicti of the crimes, and it is not reasonably probable the jury would have reached a different result had it been properly instructed. "[T]he modicum of necessary independent evidence of the corpus delicti, and thus the jury's duty to find such independent proof, is not great. The independent evidence may be circumstantial, and need only be 'a slight or prima facie showing' permitting an inference of injury, loss, or harm from a criminal agency." (*Alvarez, supra*, 27 Cal.4th at p. 1181.) The jury watched a video of the shooting. Police arrived at the scene just after it occurred, and found evidence consistent with the video, including cartridge casings, a blood trail, and the wounded victim. This "independent evidence is more than adequate to establish, as a matter of law, that the failure to give the instruction was harmless under state and federal standards." (*People v. Andrade* (2015) 238 Cal.App.4th 1274, 1299; citing *People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.)

Defendant asserts that because defendant's "admissions in the jail calls were such a pivotal part of the prosecution's case, the error cannot be deemed harmless." He argues he was prejudiced because the admission of the jail calls undermined his ability to prove self-defense and imperfect self-defense. The corpus delicti rule, however, is not affected by the potential impact of a defendant's statements. "'The corpus delicti "rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened."'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 453-454.) Here, the evidence clearly showed that the crime occurred. It is not reasonably probable that defendant would have obtained

13

a better result if CALCRIM No. 359 had been given (*People v. Watson, supra*, 46 Cal.2d at p. 836), and any error in failing to give the instruction was harmless beyond a reasonable doubt. (*Chapman v. California, supra*, 386 U.S. at p. 24.)

C. **The attempted murder verdict is supported by substantial evidence**

Defendant asserts that there was insufficient evidence to support his conviction on count 1, attempted murder. He contends that in light of Whitaker's unprovoked attack, defendant's "actions of defending himself and his passengers from a continuing attack is a complete justification, and [the] shooting was not criminal." He asserts that "since there is insufficient evidence a crime was committed, [defendant's] due process rights under the federal constitution were violated," and his conviction on count 1 should be reversed.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

Defendant asserts that he had a right to defend himself and his passenger from Whitaker's unprovoked attack,[6] and the prosecution failed to meet its burden to show that defendant did not act in self-defense.  (See *People v. Lloyd* (2015) 236 Cal.App.4th 49, 63 [a "defendant is not required to establish self-defense or the defense of others to be entitled to a not guilty verdict; he need only raise a reasonable doubt. It ultimately is the prosecution's burden to prove the absence of justification beyond a reasonable doubt."].)  Defendant argues that because Whitaker assaulted both him and his backseat passenger, "the evidence established as a matter of law the shooting was justifiable because appellant had more than a reasonable belief that Whitaker was about to commit a felony."

Defendant compares this case to *People v. Collins* (1961) 189 Cal.App.2d 575 (*Collins*), in which the defendant killed another man, Whiteside, during a physical struggle in which the defendant believed Whiteside was attempting to rape him. The Court of Appeal stated, "[T]he acts of Whiteside gave defendant reasonable grounds to believe that Whiteside was about to commit a felony (Pen. Code, § 286 [sodomy]), and that there was imminent danger of its being accomplished.  We hold the evidence establishes as a matter of law that the homicide was justifiable."  (*Id*. at pp. 592-593.)

Here, the evidence is not similar to that in *Collins*. Whitaker attacked defendant first, then walked around to the

_____

[6]Defendant incorrectly argues that his girlfriend was in the vehicle at the time of the attack and was "also in danger."  In fact, the video shows that the female passenger—who was never clearly identified at trial—got out of the SUV and walked into the restaurant before the attack occurred.

back door of the SUV, apparently to challenge or attack the passenger. But defendant did not simply roll up his windows or drive away. Instead, he retrieved a gun, got out of the car, and confronted Whitaker. As Whitaker backed away, turned around, and ran away, defendant fired at least four rounds, shooting Whitaker in the thigh and back. Defendant chased after Whitaker as he ran, firing at least one round after Whitaker rounded the corner of the restaurant, evidenced by the car that was struck. Whitaker was unarmed throughout the encounter, and at one point in the video he had his hands up as he ran away. Defendant then ran back to the vehicle and left the scene (leaving his female passenger inside the restaurant), wiped the gun clean of fingerprints, and disposed of the gun in a trash can at someone else's house. He told his brother that his intent was to kill the victim, and as trial began, he attempted to prevent witnesses from testifying against him.

This evidence was sufficient to support the jury's verdict for attempted murder. "To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) Both elements were met here. Defendant admitted his intent to his brother. In addition, the evidence that defendant shot four rounds, chased Whitaker, and shot at him as he ran away supports a finding that defendant intended to kill Whitaker. Defendant's act of shooting Whitaker multiple times was a direct but ineffectual act.

The jury was not compelled to find that defendant acted in self-defense, as defendant contends. The jury was instructed with CALCRIM No. 3470, describing the right to self-defense,

16

including that "[t]he defendant used no more force than was reasonably necessary to defend against th[e] danger." The jury was also instructed with CALCRIM No. 3474, which as given stated, "The right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist. When the attacker withdraws or no longer appears capable of inflicting any injury, then the right to use force ends." The prosecutor argued in closing that defendant used far more force than was necessary to defend against Whitaker, who was unarmed. The prosecutor also asserted that even if defendant initially had a right to use force, that right ended before he chased Whitaker while shooting at his back. Defendant asserts on appeal that he "stopped shooting once he realized he was safe." However, the jury considered that contention and rejected it; there was ample evidence to support a finding that chasing someone and shooting him was not a justifiable reaction to being punched. "Reversal is 'not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.'" (*People v. Westerfield* (2019) 6 Cal.5th 632, 713-714.) Substantial evidence supports the jury's finding that the shooting was not justified as self-defense.

Defendant also argues that even if the shooting could not be considered self-defense, it was "no more than attempted voluntary manslaughter." He asserts that he had "an actual if *unreasonable* belief in the need to continue to defend himself against great bodily injury or death." He contends that alternatively, it constituted attempted voluntary manslaughter "because the fight was a result of a sudden quarrel and/or provocation."

Attempted "[v]oluntary manslaughter is a lesser included offense of [attempted] murder when the requisite mental element of malice is negated by a sudden quarrel or heat of passion, or by an unreasonable but good faith belief in the necessity of self-defense." (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708.) The jury was instructed regarding sudden quarrel/heat of passion (CALCRIM No. 603) and imperfect self-defense (CALCRIM No. 604). These instructions, along with the instructions regarding self-defense discussed above, made clear to the jury that it could not convict defendant of attempted murder unless the prosecution proved beyond a reasonable doubt that defendant did not attempt to kill as the result of perfect or imperfect self-defense or in the heat of passion. Defendant's contention that the jury *could* have found otherwise does not demonstrate error. Substantial evidence supports the jury's finding that the crime constituted attempted murder.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, ACTING P.J.


CURREY, J.